# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2001 WL 138922 (N.D.Ill.)  
(Cite as: Not Reported in F.Supp.2d)

Page 1

C  
Prudential Ins. Co. of America v. Lehman  
N.D.Ill.,2001.  
Only the Westlaw citation is currently available.  
United States District Court, N.D. Illinois, Eastern Division.  
PRUDENTIAL INSURANCE COMPANY OF AMERICA, Plaintiff,  
v.  
Susan M. LEHMAN, etc., et al., Defendants.  
No. 99 C 4304.

Feb. 16, 2001.

*MEMORANDUM OPINION AND ORDER*

SHADUR, Senior J.

*1 Initially this action was brought by neutral stakeholder Prudential Insurance Company of America ("Prudential") as a typical interpleader proceeding [FN1] to resolve competing claims for the proceeds of Prudential's insurance policy ("Policy") on the life of decedent Timothy Zonca ("Timothy"). On September 2, 1999 this Court granted Prudential leave to deposit the entire policy proceeds with the Clerk of Court, discharging Prudential from further liability.

> FN1. Diversity jurisdiction exists under 28 U.S.C. § 1332: Prudential is a New Jersey corporation with its principal place of business in New Jersey, while all of the claimants are Illinois citizens, and the amount in controversy exceeds $75,000. Fed.R.Civ.P. ("Rule") 22 establishes an interpleader procedure available in any case over which subject matter jurisdiction exists independently.

All claimants have since moved for summary judgment under Rule 56, and their competing claims are ripe for resolution. For the reasons stated in this memorandum opinion and order, the motion of Barbara Zonca ("Barbara") (now Barbara Anderson-Sapata), Timothy Zonca ("Timothy Jr."), Julie Zonca ("Julie") and Jaclyn Zonca ("Jaclyn") (collectively "Zoncas") [FN2] is granted in part and denied in part, and the motion of Susan Lehman ("Susan") is likewise granted in part and denied in part.

> FN2. Zoncas' motion, though labeled Motion for Order Directing Disbursement of Funds and Other Relief, is effectively a motion for summary judgment and is treated as such.

*Summary Judgment Standards*

Under familiar Rule 56 principles every movant has the burden of establishing both the lack of a genuine issue of material fact and movant's entitlement to a judgment as a matter of law (*Celotex v. Catrett,* 477 U.S. 317, 322-23 (1986)). For that purpose this Court must "read[ ] the record in the light most favorable to the non-moving party," although it "is not required to draw unreasonable inferences from the evidence" (*St. Louis N. Joint Venture v. P & L Enters., Inc.,* 116 F.3d 262, 265 n. 2 (7th Cir.1997)). Where as here cross-motions are involved, that principle thus demands a dual perspective-one that this Court has sometimes described as Janus-like-that sometimes causes the denial of both motions.

Here no such risk exists, for the operative facts (when properly considered) are not in dispute. Instead the key issue proves to be whether any of Zoncas' equitable claims to the Policy proceeds trump Susan's right as the Policy's designated beneficiary, and that issue poses a question of law for this Court.

Neither side has complied with this District Court's LR 56.1, which is designed to facilitate the resolution of Rule 56 motions by calling for evidentiary statements and responses to such statements-in each instance with record citations-thus highlighting the existence or nonexistence of factual disputes. In this instance it turns out that the facts are not extraordinarily complex, so that this Court is just inconvenienced rather than being totally hamstrung by such parties' non-compliance with LR 56.1. What is more disturbing is both sides' failure to cite to relevant cases in support of their respective claims, despite the wealth of available authority.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2001 WL 138922 (N.D.Ill.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 2

*Facts* [FN3]

> FN3. Exhibits attached to the parties' motions for summary judgment are respectively cited "Z. Ex. -" and "S. Ex. -," while exhibits attached to their Responses are cited "Z. R. Ex. -" and "S. R. Ex. -."

Timothy and Barbara Zonca were married on February 9, 1972. They had three children: Timothy (born June 28, 1976), Julie (born May 17, 1980) and Jaclyn (born October 2, 1985) (Z.Ex. 1). Then in 1988 Timothy and Barbara divorced (*id.*). Their Marital Settlement Agreement ("Agreement"), made part of the Judgment for Dissolution of Marriage entered in the Circuit Court of Cook County on September 16, contained this provision (Agreement ¶ IV.E.2):

*2 TIM, at his sole expense, shall obtain and maintain in full force and effect life insurance in the amount of no less than one hundred thousand dollars, ($100,000.00), naming the three minor children as irrevocable beneficiaries for so long as he has a responsibility for their support. Upon TIM's death, the proceeds of said policy of insurance shall be used for the welfare, support and education of the minor children.

More than four years earlier (on January 18, 1984) Timothy had purchased $100,000 in life insurance coverage from Prudential under the Policy (its Policy No. 76-314-686) (S.Ex. A). At the time of issuance Timothy had designated Barbara as the Class 1 beneficiary and Timothy Jr., Julie and Jaclyn as the Class 2 beneficiaries (*id.*).

On July 22, 1989 Timothy and Susan were married. Prudential's computer records reflect that on or about January 12, 1993 the Class 1 beneficiary under the Policy was changed to Susan. But although during the course of this litigation Prudential has been unable to locate the ultimately processed written form that triggered that beneficiary change, Prudential's files do include a filled-out copy of the printed form that it uses for that purpose (Ex. 2 of S. Ex. B, photocopy attached, with Susan specifically named as the only Class 1 (hence primary and sole) beneficiary.[FN4] And in addition to the typewritten insertions of (1) Timothy's name as Insured, (2) the Policy number, (3) the Class 1 beneficiary name ("Susan M. Zonca, wife") and (4) the Class 2 beneficiary names (those of the three children), the only other insertion in the otherwise printed form says expressly:

> FN4. That Beneficiary Schedule named the three children of Timothy's and Barbara's marriage as Class 2 beneficiaries, to take if Susan did not survive Timothy.

The beneficiary designation is in accord with a signed amendment dated after the date of the application.

In 1995 Barbara filed a Petition for Rule To Show Cause ("Petition") against Timothy, charging his failure, in violation of the terms of the Agreement, (1) to provide proof of insurance and (2) to pay child support. In response Timothy's counsel (Michael Konewko, whose firm represents Susan here) tendered an April 5, 1995 letter that in turn enclosed a letter from Prudential attesting that the Policy was then "currently inforce [sic]" (Z.Ex. 5). Barbara asserts that she assumed the letter was offered as proof of compliance with the Agreement's life insurance provision, so she withdrew her pending Petition with respect to that issue.

Timothy's marriage success rate remained at zero: He and Susan were divorced on May 16, 1996. Then he died of hepatic failure less than three years later, on January 29, 1999 (Complaint ¶ 15).

Events then moved swiftly. On February 2 Zoncas' counsel David Platek ("Platek") wrote Prudential claiming the Policy proceeds under the Agreement (*id.* ¶ 19). On March 4 Prudential received Susan's claim for benefits under the Policy (*id.* ¶ 22). In April Prudential informed Platek that it believed the Policy proceeds were properly payable to Susan (*id.* ¶ 23). In response Platek sent Prudential a draft petition setting forth the Zoncas' legal and equitable claims (*id.* ¶ 24). In view of the threat of imminent litigation, Prudential filed this interpleader action (*id.* ¶ 25).

*Class 1 Beneficiary Status*

*3 Susan contends that because she is the desig-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2001 WL 138922 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

nated Class 1 beneficiary she has the sole right to the Policy proceeds. In support of her asserted status as the designated Class 1 beneficiary, Susan points to the affidavit (S.Ex. B) of Janet Franz ("Franz"), Prudential's Service Consultant in the settlement options section of its Transaction Processing Department. Franz there attests that although Prudential is unable to locate a beneficiary change form submitted by Timothy pursuant to Prudential's general procedures, Prudential's computer records would not reflect a change in beneficiary unless it had first received a written request for that change signed by Timothy. Because those computer records specifically show Susan as the Class 1 beneficiary, Franz concludes that Timothy must have submitted the required form.

Susan also points to the deposition testimony of former Prudential sales manager James Neidermeier ("Neidermeier"), who similarly testified to his understanding that the file would not reflect a change in beneficiary unless the proper form had been received and approved by Prudential's home office (S.Ex. E). Moreover, Susan states in her affidavit that during a January 1993 meeting between Timothy and Niedermeier at Susan's and Timothy's home in Leaf River, Illinois she witnessed Timothy sign a form titled Change of Beneficiary (S.Ex. F). For his part, Neidermeier had no independent recollection of discussing the change of beneficiary form with Timothy or of receiving such a form from Timothy for processing (S.Ex. E).

Zoncas respond that there is insufficient proof to conclude that Timothy changed the Class 1 beneficiary to Susan, so that Barbara is entitled to the policy proceeds as the earlier-designated beneficiary. To support that assertion Zoncas submit the counteraffidavit of recently retired Prudential District Manager John Jasinski ("Jasinski"), who testified that because none of the documents produced by Prudential indicate the receipt of a written request for change of beneficiary (as would have been recorded in the ordinary course of business), and because Form ORD29839 does not indicate that a confirmation of the change was sent to the insured, he believed that Timothy had never submitted a signed written request for change of beneficiary (Z.R. Ex. A).[FN5] Jasinski speculated instead that the change of beneficiary that appears in the computer records was erroneously entered into the system (id.).

> FN5. Susan moved to strike Jasinski's affidavit on various grounds. That motion is denied to the extent that it seeks to prevent all consideration of the affidavit on the present motions. Rule 56(e) sets the standard:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Jasinski, who was a Prudential manager for 22 years and was charged with training employees (among other things) with regard to processing change of beneficiary forms, is certainly competent to testify to the normally-followed procedure and to whether, upon his review of Prudential's file on the Policy, it appears that all of those steps were completed. Susan's assertion that the affidavit is "based on hearsay" is unfounded, for Prudential's file on the Policy clearly falls within the business records exception to the hearsay rule. Ironically, Susan's expert Franz's own affidavit testimony is based on her review of those same records. Because as explained hereafter this Court finds Jasinski's ultimate conclusion incredible under the established narrow grounds for such a determination under Rule 56, the denial of Susan's motion to strike his affidavit as a whole does not affect the outcome.

Zoncas also argue that the April 1995 letter from Timothy's counsel to Barbara that enclosed the Prudential letter stating that the Policy was then currently in effect demonstrates that Timothy had not intended to change the Class 1 beneficiary in 1993. Zoncas assert that the letter was tendered as proof of compliance with the Agreement: If Timothy had redesignated Susan as the Class 1 beneficiary (meaning that he was not in compliance with the Agreement), they contend that he would not have represented that he was in compliance.

*4 Those contentions are insufficient to raise an issue of fact as to whether Timothy changed the beneficiary from Barbara to Susan. It cannot be gainsaid that Prudential's file reflects that the change of beneficiary was effected. That being so, Prudential's failure to turn up the Change of Beneficiary form in its records cannot

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2001 WL 138922 (N.D.Ill.)  
(Cite as: Not Reported in F.Supp.2d)

Page 4

obscure the only reasonable inference from the record that Prudential *did* provide: that Timothy had indeed requested a change of beneficiary in a manner satisfactory to Prudential.[FN6]

> FN6. Where an insurer's policy has specified the method for changing the beneficiary, Illinois law (which applies in the circumstances of this interpleader action based on diversity jurisdiction, *Connecticut Gen. Life Ins. v. Gulley,* 668 F.2d 325, 326 n.1 (7th Cir.1982)) requires that the insured comply substantially with the policy terms (*Travelers Ins. Co. v. Smith,* 106 Ill.App.3d 318, 320, 435 N.E.2d 1188, 1190 (1st Dist.1982)). Proof of substantial compliance ensures that the insured's intent is clearly manifested (*id.* at 321, 435 N.E.2d at 1190). In this instance there is no direct evidence of whether Timothy substantially complied with the policy terms. But again, because Prudential's records reflect the change, the only reasonable inference is that Timothy complied at least substantially, if not fully, with the policy and that his intent was clearly manifested. Notably, in the cases exemplified by *Travelers* and its ilk, the change was not recorded by the insurance company before the filing of the interpleader action.

Any other purported explanation really defies reason, for the record here provides a classic res ipsa loquitur scenario. Is it to be imagined that Prudential (or any other major insurer) goes about changing beneficiaries under its life insurance policies on its own? And pray tell, from what source could Prudential conceivably have derived Susan's name to begin with, if not from Timothy? Any such fanciful notion is belied not only by Prudential's ultimate computer entry but by the attached photocopy of Prudential's printed form used for beneficiary designations, with the information underlying the computer entry filled in by typewriter. Thus Jasinski's affidavit assertion that the change of beneficiary that is expressly reflected by Prudential's records had been "erroneously entered"-if that assertion is intended to say (as Zoncas would have it) that the change had not emanated from Timothy's request for that change to be made-is so bizarre as to call for its outright rejection.

There is of course the well-known general prohibition against resolving credibility disputes on Rule 56 motions. But the different principle that is operative here has been well-stated in 11 *Moore's Federal Practice* § 56.11[6] [a], at 56-114 to 56-115 (3d ed.2000) (footnotes omitted, including citations to two of the three cases in the Supreme Court's definitive 1986 trilogy teaching Rule 56 principles: *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 593 (1986) and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 249-50 (1986)):

> Although courts may not determine whether a witness is lying or whether one witness has more accurate perceptions than another, courts are permitted to set the boundaries of permissible factual inferences. Courts may also make determinations regarding certain arguably factual issues as a matter of law if the factual question can be answered in only one way....
>
> For example, movant and nonmovant may submit evidence supporting different factual contentions. If the fact differences are not material under the substantive law, summary judgment may of course be granted. Even if the parties differ about material facts, the dispute may not be genuine if the nonmovant asserts facts and seeks a favorable, but legally impermissible, inference from these facts in order to prevail in the litigation. If the factual inference sought by the nonmovant is objectively impossible, the proffered facts do not create a factual dispute. The court may grant summary judgment in these cases without assessing credibility, weighing evidence, or making fact findings.

*5 In sum, no reasonable factfinder could determine that a Prudential employee would-or indeed could-have changed the designated beneficiary in the computer system without Timothy himself having taken the steps to achieve that result. And so Zoncas' argument reduces to an assertion that *Prudential's* asserted failure to follow its own policies and procedures-a failure that may certainly be reasonably inferred (thus giving Zoncas their due on Susan's Rule 56 motion) from its inability to locate in its records documentation comprising the Change of Beneficiary form and the transmittal to Timothy of confirmation of the change-renders the change ineffective.

But those procedures are entirely for the benefit of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 138922 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Page 5

Prudential (*Travelers,* 106 Ill.App.3d at 321, 435 N.E.2d at 1190)-and here Prudential has eschewed any effort to use those procedures to defeat Susan's claim by its very act of putting the decision to this Court via this interpleader action (*id.*). Accordingly Prudential's presumed failure to perform such ministerial acts does not nullify Timothy's otherwise successful attempt to redesignate the policy beneficiary (see, e.g., *Thompson v. Metropolitan Life Ins. Co.,* 318 Ill.App. 235, 244, 47 N.E.2d 879, 883 (2d Dist.1943) and cases cited there; and see the like application of well-established Illinois law in *Continental Assurance Co. v. Platke,* 295 F.2d 571, 573 (7th Cir.1961)).

And so even with the evidence viewed in the required light reasonably favorable to Zoncas, there is really no genuine issue of fact as to whether Timothy redesignated Susan as the Class 1 beneficiary. That determination does not entirely dispose of the competing claims, however, for while the general rule is that the named beneficiary acquires a vested right to policy proceeds upon the death of the insured, there are exceptions where someone other than the named beneficiary has an equitable right to be treated as such. This opinion turns to that subject.

*Equitable Claims*

Zoncas contend that even if Susan is the Class 1 beneficiary, they have superior equitable claims to the Policy proceeds. *Smithberg v. Illinois Mun. Retirement Fund,* 192 Ill.2d 291, 300-01, 735 N.E.2d 560, 566 (2000) (citing earlier cases) recently reaffirmed the well-settled principle:

It has been generally held that when marital settlement agreements require an insured to maintain life insurance for the benefit of a particular beneficiary, that beneficiary has an enforceable equitable right to the proceeds of the insurance policies against any other named beneficiary except one with a superior equitable right.

Under the Agreement Timothy was required to name Timothy, Jr., Julie and Jaclyn as irrevocable beneficiaries "for so long as he has a responsibility for their support."Separate terms in the Agreement provide that Timothy's support obligations terminate "upon the emancipation of all the children" and define "emancipation." Timothy also agreed to contribute to the children's college education expenses after their emancipation to the extent he was financially able.

*6 Jaclyn was 13 years old when Timothy died, and there is no evidence (nor is there reason to believe) that she was "emancipated" as that term is defined in the Agreement.[FN7]Hence Timothy still had responsibility for her support at the time of his death, and he was therefore required to name her as an irrevocable beneficiary of the Policy to that extent. Under *Smithberg* Jaclyn has an enforceable equitable right to the portion of the Policy proceeds that she would have received had she properly been designated as a beneficiary.

> FN7. At S. Rep. 3 (emphasis in original) Susan asserts "There is no evidence any MINOR child of TIMOTHY ZONCA has survived his passing."If that awkward locution is read as a statement that the record contains nothing to indicate that any of the Zonca children was a minor at the time of Timothy's death, it runs counter to the Agreement's recitation of the children's dates of birth (and it will be recalled that the Agreement was made part of the court records of the Timothy-Barbara divorce).

As for Timothy Jr. and Julie, both were over 18 (and hence emancipated) when Timothy died. While Timothy might perhaps have been held to have had "a responsibility for their support" upon a proper evidentiary showing that they were then in college and that the various complex preconditions for Timothy's obligation to contribute financially in that event had been met (see Agreement ¶ IV.D), Zoncas' total failure of proof on that score negates any equitable interest of Timothy Jr. or Julie in the Policy proceeds.

Cases such as *Cohn v. Metropolitan Life Ins. Co.,* 202 Ill.App.3d 86, 91-92, 559 N.E.2d 790, 793-94 (1st Dist.1990) teach that where an agreement that requires a parent to maintain life insurance as long as he has a support obligation treats his minor children equally, each child's interest in the policy lapses upon his or her emancipation, reverting back to the owner of the policy. *Estate of Comiskey,* 125 Ill.App.3d 30, 36-37, 465

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 6
Not Reported in F.Supp.2d, 2001 WL 138922 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

N.E.2d 653, 658 (1st Dist.1984) (adhered to in *Cohn*) had held that parties to an agreement to "[n]ame the two minor children of the parties as irrevocable beneficiaries of [life insurance] policies during their minority" had intended to treat each child equally. Because one of the children there had become emancipated before the insured died, *Comiskey,id.* at 36, 465 N.E.2d at 658 held that the still-minor child was entitled to look to only one-half of the proceeds, with the other half having reverted back to the decedent.

Here the Agreement's language tracks that in *Comiskey.* Under Illinois law such language connotes an intent to treat each child equally, with each minor child (all three children were still minors at the time of the divorce in 1988) entitled to look to a one-third share in the proceeds. As taught by *Cohn* and *Comiskey,* Timothy Jr.'s and Julie's interests reverted back to Timothy upon their emancipation, and Jaclyn had an equitable interest in no more than one-third of the Policy proceeds.[FN8]

> FN8. Because the Agreement called for the minor children to benefit to the extent of a specified dollar amount, and because no admissible evidence has been presented to establish any added obligation to Jaclyn in the Agreement's unquantified categories of possible support, Jaclyn is not now equitably entitled to any amount above that (see *Perkins v. Stuemke,* 223 Ill.App.3d 839, 846-47, 585 N.E.2d 1125, 1130 (4th Dist.1992). This opinion goes on to deal with the situation during the remaining period of Jaclyn's minority.

Agreement ¶ III.1 set Timothy's child support obligation at the greater of 32% of his yearly net income and $797 per month. Zoncas have offered no evidence as to the former figure, so that the latter controls for present purposes. Jaclyn's one-third interest ($265.67 per month), when multiplied by the 24.8 months between Timothy's January 22, 1999 date of death and the February 15, 2000 date of this judgment order, comes to $6,588.62 at present. As for the remaining $26,744.71 that makes up Jaclyn's potential one-third share of the Policy proceeds, that amount is distributable to Barbara as constructive trustee (1) for Jaclyn to the extent that the Agreement creates an entitlement to that amount for the components of Jaclyn's "welfare, support and education" (Agreement ¶ IV.E.1's language) that are specified elsewhere in the Agreement until Jaclyn's 18th birthday arrives on October 2, 2003 (or perhaps thereafter for Jaclyn's college education as specified in Agreement ¶ IV.D) and (2) for Susan to the extent of any proceeds not so used.[FN9]

> FN9. This Court does not retain jurisdiction for purposes of Barbara's ongoing accountability for discharge of her obligations as constructive trustee, as to which the parties are expected to resolve matters between themselves or-in the absence of agreement-by submission to a state court of appropriate jurisdiction.

*7 Leaving aside the just-discussed children's interest (as to Jaclyn) and lack of interest (as to Timothy Jr. and Julie) in the Policy proceeds, little time or space needs to be devoted to Barbara's arguments that she herself has a superior equitable claim to the proceeds even if Susan is the designated beneficiary. None is availing.

First Barbara claims that she is equitably entitled to the proceeds as a "judgment creditor" based on past-due child support. But while Zonca's brief says that Timothy had accrued more than $50,000 in unpaid support at the time of his death, that assertion is totally unsupported by any record evidence-not only by the total absence of any claimed judgment, but also by the lack of any other record support admissible under Rule 56(e). Under Rule 56(e) such an unsupported statement cannot be considered on summary judgment to defeat Susan's claim. This opinion therefore need not reach the question whether under Illinois law life insurance proceeds may be used to satisfy past-due support obligations (as contrasted with the post-death obligation to Jaclyn calculated above).

As to Barbara's related claim that she is equitably entitled to the Policy proceeds to cover future support obligations beyond what has been calculated above, it is clear from the Agreement that Timothy and Barbara intended the life insurance policies that they were both required to maintain to provide support for the minor children in the event of the untimely death of either parent.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 138922 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Page 7

In essence the Policy stands at most in Timothy's stead, and the already-set-out calculation and potential future entitlement on Jaclyn's part fully satisfy the entirety of Timothy's post-death obligation on the record tendered to this Court.

Next Barbara argues that she is entitled to a constructive trust on the proceeds because she withdrew her Petition based on the letter submitted by Timothy's counsel stating that the Policy was still in effect, which she took as proof of compliance with the Agreement. But if Timothy was in fact in compliance with the Agreement, the three minor children-and *not* Barbara-would be listed as the Class 1 beneficiaries. Any non-compliance on Timothy's part as to the children has been remedied by this Court's application of the principle reaffirmed in *Smithberg.* So Barbara herself has no equitable right to the proceeds on those grounds.[FN10]

> FN10. Relatedly, to the extent Barbara is also arguing that she is equitably entitled to the proceeds because she withdrew her Petition on the assumption that if the Policy was still in effect she was still the named beneficiary, that argument also goes nowhere: Barbara herself had no right to be the named beneficiary, and so she could not reasonably have believed that Timothy would not remove her as a benefi- ciary.

For her part, Susan advances no argument that she has a superior equitable claim to the portion of the proceeds over which Jaclyn (through Barbara) is entitled to a constructive trust. Because she and Timothy were also divorced at the time of his death, such a claim is difficult to imagine in any event. And there is simply no support for Susan's assertion that Zoncas are not entitled to an equitable trust on the proceeds because they failed to pursue their claim during Timothy's lifetime-*Perkins,* 223 Ill.App.3d at 845-46, 585 N.E.2d at 1129 soundly rejected that as a defense in circumstances nearly identical to those here. Hence Jaclyn's claim to a constructive trust is not defeated.

*8 To sum up: Upon the lapse of Timothy Jr.'s and Julie's interests and their reversion to Timothy, he was entitled to designate those interests to whomever he wished. And the only reasonable reading of the evidence is that he designated them to Susan. But because Jaclyn was still a minor entitled to Timothy's support to the extent specified in the Agreement, Timothy did not have the authority to designate anyone else as the beneficiary of her interest in the Policy proceeds, and she is therefore equitably entitled to the accrued amount as calculated in this opinion, plus the earlier-described potential of a future interest.[FN11]

> FN11. Susan also filed a Motion To Strike Part of Response to Rule 56 Motion for Judgment. That motion is denied. To any extent that the statements in the paragraphs to which Susan points are not supported by record evidence, they have not been considered by this Court. Susan's other asserted grounds for striking those paragraphs are baseless.

*Conclusion*

There is no genuine issue of material fact, and Susan is entitled to a judgment as a matter of law except to the limited extent of Jaclyn's interest. Susan is entitled to the Policy proceeds as the designated Class 1 beneficiary, subject to a constructive trust in Jaclyn's favor in the amount of $6,588.62 and a further constructive trust in favor of Jaclyn and perhaps Susan as provided in this opinion, in each instance to be distributed to Barbara as constructive trustee.[FN12] Barbara's, Timothy Jr.'s and Julie's claims are denied and are dismissed with prejudice. As the bottom line, the Clerk of Court is ordered to distribute the funds on hand from Prudential's deposit two-thirds to Susan and one-third to Barbara, with the latter to hold and hereafter distribute that share as constructive trustee in accordance with this opinion.

> FN12. Two technical matters should be added here. First, if and to the extent that the deposited Policy proceeds may have grown beyond the $100,000 figure (they came to $105,387.58 when Prudential deposited them with the Clerk of Court, and there may be further accrued interest), Susan's and Jaclyn's shares are entitled to share ratably in that accretion. Second, given Jaclyn's minority status, the disbursement for

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 138922 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Page 8

her account should presumably be made to Barbara-but impressed with the constructive trust.

The Company is requested to make settlement of the above numbered contract in accordance with the following Beneficiary Provision. The texts on the reverse headed Beneficiaries for Other Proceeds and Special Conditions are a part of the Beneficiary Provision in any case to which they apply. As used in the text of this form the words we, our, us and the Company mean the company that issued the contract.

Beneficiary Provision

The proceeds that arise from the Insured's death will be settled in one sum with the beneficiary(ies) shown below, if a contract provides, by rider or otherwise, for income payments to begin upon the insured's death, the word proceeds includes the one sum value of those payments that arise from his or her death.

Beneficiary Schedule

Beneficiaries in Order of Priority:

Class 1

Susan M. Zonca, wife.

Class 2

Timothy S. Zonca, son, Julie E. Zonca and Jaclyn Zonca, daughters.

Class 3

Class 4

Class 5

These statements apply to the beneficiaries: (1) One who survives the Insured will have the right to be paid only if no one in a prior class survives the Insured; (2) One who has the right to be paid will be the only one paid if no one else in the same class survives the Insured; (3) Two or more in the same class who have the right to be paid will be paid in equal shares, but if children by representation are included in that class they will only have the right, as we state under Special Conditions on the reverse, to the share to which their deceased parent would have been entitled if that parent were then living; and (4) If none survives the Insured, unless we state otherwise below, we will pay in one sum to the Insured's estate.

*9 This contract might have an Automatic Mode of Settlement provision. If so, beneficiaries who do not have a right to be paid at the insured's death may still have a right to be paid under that provision.

Beneficiaries for Other Proceeds

This section applies only to a contract that provides for insurance on the lives of the insured, the insured spouse and dependent children
The beneficiary for insurance payable upon the death of the insured spouse be the insured if living otherwise the estate of the insured spouse.
The beneficiary for insurance payable upon the death of a dependent child will be the insured if living. otherwise the insured spouse if living, otherwise the estate of the later to die of the insured and the insured spouse.

This section applies only to a contract that provides for insurance on the lives of the insured and dependent childrenThe beneficiary for insurance payable upon the death of a dependent child will be the insured if living otherwise the beneficiary(ies) in the order of priority and in accordance with the distribution shown in this beneficiary provision, otherwise the estate of the later to die of the insured and the beneficiary(ies).

This section applies only to a contract that provides for insurance on the lives of the insured and the insured spouse (other than a joint whole life or survivorship modified whole life contract).The beneficiary for insurance payable upon the death of the insured spouse will be the insured if living, otherwise the estate of the insured spouse.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                               Page 9
Not Reported in F.Supp.2d, 2001 WL 138922 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Special Conditions

The phrase their children by representation might be included in a designation of a class of beneficiaries who are to receive settlement of the proceeds. If so, here is what that means. If a beneficiary rather than a child by representation in that class is not living at a time when he or she would otherwise have been entitled to settlement, and if any child of his or hers is then living (his or her child by representation), we will pay the amount to which that beneficiary would have been entitled in one sum to such child or, if there is more than one such child, in equal shares to such children.

In the case of a variable annuity or a retirement annuity: (a) the word policy means contract; (b) the word insured means Annuitant; and (c) the word proceeds means any amount that may arise from the Annuitant's death before the annuity date.

Unless otherwise stated, the relationship of any beneficiary shown in this form is to the insured.

In this form, the words child and children mean only sons and daughters. They do not mean grandchildren or other descendants.

Before we make a payment, we have the right to decide what proof we need of the identity, age or any other facts about any persons designated as beneficiaries. If beneficiaries are not designated by name and we make payment(s) based on that proof, we will not have to make payment(s) again.

Complete Comb 85323 (Beneficiary Data Form) if required in your state.

| Signed at | | Date | | | |
|---|---|---|---|---|---|
| City | State | Month | Day | Year | Required signature |

Mail contract to
*(Always check one box)*
[] Insured or Owner at address on records.
[] Insured or Owner at address below:
*(Please print)*
Full name

[] Inforce Office for delivery.
[] Submitting Office for delivery.

| Address | | | |
|---|---|---|---|
| City | State | | Zip Code |
| Submitted by | | | |
| Region | Office Code | Office Name | Detached Office |

Name of Field Representative servicing this change

    *10 [] Check here if address at left is a change in permanent address.

END OF DOCUMENT

N.D.Ill.,2001.
Prudential Ins. Co. of America v. Lehman
Not Reported in F.Supp.2d, 2001 WL 138922 (N.D.Ill.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.