# EXHIBIT D

Westlaw

Not Reported in F.Supp.  
Not Reported in F.Supp., 1988 WL 9108 (N.D.Ill.)  
(Cite as: Not Reported in F.Supp.)

Page 1

H  
Kane, McKenna and Associates, Inc. v. Remcorp, Inc.  
N.D.Ill.,1988.  
Only the Westlaw citation is currently available.  
United States District Court, N.D. Illinois, Eastern Division.  
KANE, McKENNA AND ASSOCIATES, INC., Plaintiff,  
v.  
REMCORP, INC., City of Chicago a municipal corporation, Douglas Guthrie, Bess Donaldson, Brenda Gaines, Van Kampen & Merritt Inc., Northern Trust Co., Marc Berger and Jack Berger, Defendants.  
No. 87 C 5535.

Jan. 1, 1988.

*MEMORANDUM OPINION*

KOCORAS, District Judge:

*1 This matter is presently before the court on the motions of certain defendants for the imposition of sanctions against plaintiff and/or its attorney pursuant to F.R.C.P. 11. For the following reasons, defendants' motions are granted.

*FACTS*

Plaintiff, Kane, McKenna and Associates, Inc. ("Kane-McKenna"), is an Illinois corporation engaged in the investment banking business. Defendants Marc and Jack Berger are the principal shareholders, officers, and employees of defendant Remcorp, Inc. (collectively "the Developer defendants"). Defendants Guthrie, Donaldson, and Gaines were all sued in their official capacities as employees of defendant City of Chicago (collectively "the Municipal defendants"). Defendants Van Kampen & Merritt, Inc. and Northern Trust Co. (the "Underwriter defendants") are also engaged in investment banking in Illinois.

The City of Chicago administers a program known as T.E.M.P.O. (tax-exempt multifamily property opportunities) which allows residential housing developments to be financed through tax-exempt bonds pursuant to established guidelines published by the City. In 1985, the Developer defendants were planning a multi-family residential development in Chicago which it hoped to finance through T.E.M.P.O. In April, 1985, pursuant to this plan, the Developer defendants entered an agreement with plaintiff for the procurement of bond financing. It is impossible for this court to determine the remainder of the facts underlying this dispute due to the conclusory language used in the complaint. It appears, however, that defendants eventually obtained bond financing through T.E.M.P.O. with the aid of the Underwriter defendants rather than plaintiff.

Whatever the facts, on June 22, 1987, plaintiff filed a three-count complaint, through its attorney James H. Wolf, seeking "anti-trust and other relief." In Count I, plaintiff inartfully alleged that defendants Remcorp, Gaines, Guthrie, Donaldson, Van Kampen, and Northern Trust were co-conspirators in a scheme to monopolize the underwriting and placement of tax-exempt revenue bonds in Chicago in violation of §§ 1 and 2 of the Sherman Act. Count II sought damages for an alleged breach of contract against the Developer defendants. Count III requested compensatory and punitive damages from the Municipal defendants for tortious interference with plaintiff's contractual relations.

In August, 1987, pursuant to a court ordered briefing schedule, all defendants filed motions to dismiss for failure to state a claim, together with supporting memorandums. Subsequently, on September 2, 1987, plaintiff voluntarily dismissed its lawsuit pursuant to F.R.C.P. 41(a)(1). On October 8, 1987, the Municipal defendants and the Developer defendants filed the instant motion asking this court to impose sanctions against plaintiff, its attorney, or both pursuant to F.R.C.P. 11 for failing

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1988 WL 9108 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

to make a reasonable inquiry into the factual and legal bases of its claims before initiating the lawsuit.

Plaintiff responded on November 4, 1987, through its attorney, by filing a six-page brief entitled "Special and Limited Response to Motion for Sanctions." The only argument set forth in this brief was that plaintiff's voluntary dismissal deprived this court of jurisdiction to entertain the motions for sanctions-an argument expressly rejected by the Seventh Circuit four months earlier in *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073 (7th Cir.1987) (decided June 29, 1987). The Municipal defendants pointed out this infirmity in their reply brief filed November 12, 1987. Over one month later, one day before this court was scheduled to rule on the present motion, an associate with Mr. Wolf's law firm appeared before this court seeking leave to withdraw plaintiff's prior response and to file a substantive response instanter. Plaintiff's motion was granted, thus necessitating the preparation and filing of additional reply briefs by both the Municipal and Developer defendants.

*DISCUSSION*

*2 In 1983, Federal Rule of Civil Procedure 11 was amended for the purpose of "reduc[ing] the reluctance of courts to impose sanctions ... by emphasizing the responsibilities of the attorney and reenforcing those obligations by the imposition of sanctions." F.R.C.P. 11, Notes of Advisory Committee on Rules, 1983 amendment. Rule 11, as amended, states in pertinent part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated.... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper, that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11, 28 U.S.C.A.

The Seventh Circuit, in its most recent discussion of Rule 11, stated that the standard for imposing sanctions thereunder is an objective determination of whether the party's conduct in question was reasonable under the circumstances. *Brown v. Federation of State Medical Boards of U.S.*, 830 F.2d 1429 (7th Cir.1987). In the instant case, defendants bring their motions under the "frivolousness clause" of Rule 11 which is composed of two subparts: whether the party or attorney made a reasonable inquiry into the facts, and whether the party or attorney made a reasonable inquiry into the law. *Brown, supra*, at 1435. A violation of either subpart constitutes a violation of Rule 11. *Id.*

In determining whether the attorney made a reasonable inquiry into the facts of a case, the district court should consider several factors: whether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion, or other paper; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts.

*3 In determining whether the attorney in ques-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1988 WL 9108 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

tion made a reasonable inquiry into the law, the district court should consider: the amount of time the attorney had to prepare the document and research the relevant law; whether the document contained a plausible view of the law; the complexity of the legal questions involved; and whether the document was a good faith effort to extend or modify the law. Although Rule 11 does not require "scholarly exposition or exhaustive research," in this case it is clear that Mr. Wolf failed to make even the minimal amount of inquiry incumbent on a competent attorney. *Id.,* at 1436.

This finding is based on several grounds. First, Count I represents a woefully inadequate attempt to allege an antitrust conspiracy among all defendants except the City and the Bergers. The language used was legally insufficient to state a claim under the Sherman Act. In order to sufficiently plead a violation under § 1 of the Sherman Act, plaintiff must state facts which allege: (1) concerted action; (2) to restrain trade or commerce; (3) which has injured or will injure both plaintiff, and (4) the market at issue. *See Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101 (1984). "The pleader may not evade these requirements by merely alleging a bare legal conclusion; if the facts 'do not at least outline or adumbrate a violation of the Sherman Act, the plaintiffs 'will get nowhere merely by dressing them up in the language of antitrust.' " *Id.,* at 1106, *quoting, Sutliff, Inc. v. Donovan Cos.,* 727 F.2d 648, 654 (7th Cir.1984). In this case, plaintiff's complaint contained no *facts* at all, much less facts which "outline or adumbrate" an antitrust violation.

Second, the antitrust claims clearly lacked merit. The Local Government Antitrust Act of 1984, 15 U.S.C. § 34, et seq. (the "Act"), provides that: "[n]o damages ... may be recovered under section 15, 15a, or 15c of this title from any local government, or official, or employee thereof acting in an official capacity." 15 U.S.C. § 35. The same immunity is provided to all persons against whom an antitrust claim is brought based on any official action directed by a local government, or official or employee thereof. 28 U.S.C. § 36(a). In its amended response, plaintiff argues that it was not unreasonable to bring its antitrust suit against the individual municipal defendants because there is not "one case, directly on point, wherein individual city officials were given absolute blanket immunity." Pl.Am.Resp. at 5. Not only is this contention flatly erroneous, but in support thereof, Mr. Wolf misrepresents and/or misapplies the holdings of three cases which discussed the Act or its common-law ancestor, the state-action exemption. In so doing, Mr. Wolf has further demonstrated his disregard for the integrity of this court and his responsibilities as an attorney.

Mr. Wolf stated that "[i]n *Fisichelli v. Town of Methune [sic],* 653 F.Supp. 1494 (D.Mass.1987), the District Court expressly held that the individual officials *did not* have anti-trust immunity." Pl.Am.Resp. at 3. In that case, however, the court recognized the general rule of immunity but found that Mr. Fisichelli had expressly "alleged facts that would, if proven, render the state-action exemption inapplicable." *Fisichelli,* 653 F.Supp. at 1499. Kane-McKenna, in its complaint did not allege that defendants Gaines, Guthrie, and Donaldson were acting outside the scope of their official capacities or for personal financial gain. To the contrary, plaintiff identifies each of these defendants with reference to their official titles. Additionally, plaintiff states that the other defendants acted "at the behest of" Gaines, Guthrie, and Donaldson. Pl.Comp., at ¶ 17. Thus, the plain language of plaintiff's complaint clearly established grounds for the immunity of all defendants.

*4 Mr. Wolf also cited *Montauk-Caribbean Airways Inc. v. Hope,* 784 F.2d 91 (2d Cir.1985), stating that the court was "silent as to the action pending against the town officials." Pl.Am.Resp. at 4. Contrarily, the court affirmed the district court's dismissal based on the Act and engaged in a thorough discussion of the scope of immunity granted under the Act to municipal officials (see *Id.* at 94-95), expressly stating that the "act insulates municipalities *and their representatives* from monetary claims arising under the antitrust laws." *Id.,* at 94 (emphasis added). Finally, Mr. Wolf stated that in *Palm Springs Medical Clinic, Inc. v. Desert Hospit-*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1988 WL 9108 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Page 4

*al*, 628 F.Supp. 454 (C.D.Cal.1986), the court denied defendant official's motion to dismiss under the state-action exemption. That defendant, however, did not move for a Rule 12(b)(6) dismissal, but rather, for a more definite statement under Rule 12(e). These misrepresentations by Mr. Wolf themselves require sanctions.

In short, the Act does provide absolute immunity to local governments, its officials and employees, acting in their official capacities, from suit for money damages for violation of the Sherman Act. *See Montauk-Caribbean Airways,* 784 F.2d at 94-95. No facts were alleged in plaintiff's complaint which, if proven, would defeat that immunity and no inference can be drawn from the allegations contained in Count I that plaintiff was asserting a good-faith argument for the modification of the Act, since it wasn't even alluded to anywhere in the complaint. Clearly, no reasonably competent attorney could believe that Count I was well grounded in the facts alleged nor warranted by existing law.

Count II is also fatally defective. Count II seeks damages against the Developer defendants for an alleged breach of contract. Count II is wholly insufficient to state a claim. In Illinois, it is axiomatic that to properly plead a claim for breach of contract, plaintiff must allege: (1) the existence of the contract purportedly breached by defendant; (2) the plaintiff's performance of all contractual conditions required of him; (3) the facts of the defendant's alleged breach; and, (4) the existence of damages as a consequence thereof. *Martin-Trigona v. Bloomington Federal, etc.,* 101 Ill.App.3d 943, 428 N.E.2d 1028, 1031 (1st Dist.1981) (citation omitted). Further, allegations demonstrating the existence of the contract must contain facts indicating an offer, acceptance, and consideration. *Id.* (citations omitted). A general allegation that a contract exists, without supporting facts, is merely a legal conclusion. *Id.* (citation omitted).

Count II of plaintiff's complaint fails to allege facts adequate to state an action for breach of contract. Although ¶ 11 sufficiently alleges the existence of a contract between plaintiff and Remcorp, no facts are alleged demonstrating plaintiff's full performance, defendants' breach, or consequential damage to plaintiff. In ¶ 13, it states "plaintiff undertook to fulfill their (sic) obligations under the contract ..."; this is a far cry from alleging full performance. Additionally, the only facts from which this court could possibly infer a breach by Remcorp are contained in ¶ 16, which states: "That on August 28, 1985, because of the actions of the defendant conspirators the defendant, Remcorp, Inc., informed plaintiff that it would not need their services as it would obtain conventional financing rather than proceed with the tax-exempt bonds, and the City of Chicago, through its officials, refused to permit plaintiff and its affiliate to underwrite and place the subject bonds." Nowhere in the alleged "contract" does it state the intended duration of the agreement nor the terms under which it may be terminated. It is well-established in Illinois that an executory contract which does not contain a provision fixing its duration is terminable at the will of either party. *Steinberg v. Keepper-Nagel Real Estate Invest., Inc.,* 14 Ill.App.3d 619, 622, 303 N.E.2d 46, 48 (2d Dist.1973). Thus, plaintiff's allegations, taken as a whole, establish nothing more than that Remcorp acted on its right to terminate an executory contract. In its response to this motion plaintiff argues fervently that the contract was to remain in effect until the completion of financing for the River West project. However, no facts are alleged in the complaint nor evident from the "contract" incorporated therein which would support this contention. The defect is in no way cured by the bare legal conclusion set out in ¶ 17 of Count II, that "Remcorp, Inc., vexatiously and unreasonably breached the contract...." Facts demonstrating the existence of some damage to plaintiff are also conspicuously absent from Count II. These deviations from proper pleading practice again indicate that Mr. Wolf failed to make the pre-filing inquiry into the law which is required of him.

*5 Additionally, Mr. Wolf failed to make a reasonable inquiry into the facts underlying Count II. In its Count II prayer for relief, plaintiff requests damages from "Remcorp, Inc., and the Bergers, jointly and severally ...," yet no facts are alleged to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 5
Not Reported in F.Supp., 1988 WL 9108 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.)

establish personal liability on the part of the Bergers. Throughout the complaint, the Bergers are identified and referred to only as agents of Remcorp (¶ 11) and principal shareholders, officers and employees of Remcorp (¶ 5). Mr. Wolf had an obligation to determine who was a party to, and thus bound by, the alleged contract and to state the facts establishing such liability within the allegations of the complaint.

Finally, it is evident that the facts cannot justify the claim contained in Count III for tortious interference with contract against the Municipal defendants. In order to maintain such an action, plaintiff was required to file a written claim with the city within one year from the date the cause of action accrued. Ill.Rev.Stat. ch. 85, ¶ 8-103 (1985). In ¶ 16 of the complaint, plaintiff states that on August 28, 1985 Remcorp informed plaintiff that it would not need its services because, *inter alia,* the City of Chicago through its officials refused to permit plaintiff to underwrite the bonds. Thus, by plaintiff's own allegations, its cause of action accrued August 28, 1985. Plaintiff's argument that it filed a notice of claim December 30, 1986, well over one year later, is thus irrelevant. It is obvious from the record that the allegations contained in Count III were not well grounded in fact.

*6 In conclusion, plaintiff's counsel, Mr. Wolf, clearly violated Rule 11 by his failure to conduct the required legal and factual investigation prior to filing the complaint in issue. Not only was the complaint devoid of factual allegations necessary to maintain any of the alleged causes of action, but the allegations which were contained therein were insufficient or defective as a matter of law. In short, based on the record before us, we can see no justification for a reasonable attorney to have filed the instant complaint. Additionally, Mr. Wolf's initial response to the instant motions itself represents a violation of Rule 11. Mr. Wolf relied on the notion, clearly overruled in this circuit, that a 41(a)(1) dismissal deprives this court of jurisdiction to entertain a Rule 11 motion. A reasonable investigation of the law would have revealed to Mr. Wolf the improvidence of this argument.

Further, Mr. Wolf's unexplained delay in moving to amend plaintiff's response caused a substantial waste of judicial resources in that the ruling originally prepared had to be rewritten based on plaintiff's late-coming substantive response, not to mention defendants' added costs incurred in replying to plaintiff's amended response. In short, throughout the course of this litigation, Mr. Wolf has ignored his duties under Rule 11.

Once a violation of Rule 11 is found, the district court is required to impose sanctions. *Brown, supra,* at 1434, n. 3. In so doing, the court must choose the least severe sanction which adequately serves the purpose for which it was imposed. *Id.,* at 1437. Two related purposes of Rule 11 will be served by the imposition of sanctions in the instant case; requiring the careless or reckless attorney to bear all costs incurred due to his conduct, and deterring Mr. Wolf and other members of the bar from taking the same frivolous course of action in the future. *See Brown, supra,* at 1437-38.

In this case, the complaint filed by Mr. Wolf was factually and legally infirm. Were it not for this frivolous filing, none of the defendants would have incurred any legal fees in defense of this matter. Further, Mr. Wolf has not offered this court any reasonable explanation for his violations of Rule 11 nor has he alerted us to any proper mitigating circumstance. His contention that this court should deny this motion because the defendants in the state court action may resort to § 2-611 of the Illinois Code of Civil Procedure for protection from false pleadings is misplaced. As the Seventh Circuit stated in *Szabo,* "An award under Rule 11 is a 'sanction' for violating a rule of court. The obligation to answer for one's act accompanies the act...." *Szabo Food Service,* 823 F.2d at 1079. Mr. Wolf has imposed costs on the defendants and the judicial system by violating Rule 11. This case never belonged in federal court. Accordingly, Mr. Wolf is ordered to pay the costs and reasonable attorney's fees, of all defendants, which were reasonably incurred in defense of this action. All defendants must submit to this court a final statement of their fees and costs from which it will determine the ap-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1988 WL 9108 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Page 6

propriate dollar amount of Mr. Wolf's sanction.

N.D.Ill.,1988.
Kane, McKenna and Associates, Inc. v. Remcorp, Inc.
Not Reported in F.Supp., 1988 WL 9108 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.